**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NENA REED | |
| *Plaintiff*, | |
| v. | Case No.: |
| ALLIED BENEFIT SYSTEMS, | |
| *Defendant.* | **JURY DEMANDED** |

**COMPLAINT**

NOW COMES the Plaintiff, NENA REED, by and through her attorneys, and for her complaint against the Defendant, ALLIED BENEFIT SYSTEMS, states as follows:

**NATURE OF ACTION**

1.      This action is brought by Plaintiff Nena Reed, pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2615 ("FMLA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*, as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/2-102, *et seq.*, for claims of discrimination due to pregnancy in violation of Title VII and the IHRA, as well as retaliation in violation of the FMLA, Title VII, and the IHRA and intentional infliction of emotional distress.

2.      As alleged with greater particularity below, this action is brought because, after Defendant Allied Benefit Systems ("Allied" or "Defendant") became aware of Plaintiff Nena Reed's ("Nena" or "Plaintiff") pregnancy, it began treating her differently and ultimately fired her in the middle of the COVID-19 pandemic at 29 weeks pregnant. Nena's termination was due

1

to her pregnancy and in retaliation for her complaining about the pregnancy discrimination she was subjected to and her need for FMLA leave. Allied, a health care benefits solution company, failed to accurately convey to Nena her available FMLA time and how FMLA was accrued at Allied. Shortly after her termination, Nena lost her baby.

## PARTIES

3.      Plaintiff is a female citizen of Florida.

4.      Defendant is a corporation doing business in the State of Illinois and is either registered or incorporated under the laws of the State of Illinois.

5.      Defendant is a healthcare benefits solutions company.

6.      At all relevant times, Defendant employed in excess of 50 employees at its Chicago, Illinois facility and was thus an employer and covered entity as defined under the IHRA, Title VII, and FMLA.

## JURISDICTION & VENUE

7.      This Court has original jurisdiction over Plaintiff's FMLA and Title VII claims under 28 U.S.C. §§ 1331 and 1343, and 29 U.S.C. § 2617.

8.      This Court also has supplemental jurisdiction over Plaintiff's Illinois state law claims pursuant to 28 U.S.C. § 1367(a).

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1291(b) because Defendant resides in this District and all of the alleged unlawful employment practices giving rise to this Complaint occurred within this District.

## ADMINISTRATIVE EXHAUSTION

10.     Nena has exhausted all mandatory pre-complaint procedures required by law by filing timely administrative complaints with the Illinois Department of Human Rights ("IDHR") and the U.S. Equal Employment Opportunity Commission ("EEOC").

11.     More specifically, Nena filed Charge No. 440-2020-06152 on October 6, 2020, which was cross-filed with the IDHR.

12.     On July 15, 2021, the EEOC issued its "Dismissal and Notice of Rights" letter acknowledging Nena's charge of discrimination and directing Nena to file suit.  A copy of the EEOC Charge and the Dismissal is attached hereto as Exhibit 1.

13.     Nena files this complaint against Allied within 90 days of her receipt of the EEOC Notice.

14.     Plaintiff timely requested that the IDHR adopt the findings of the EEOC on October 11, 2021.

## FACTS COMMON TO ALL COUNTS

15.     On or about November 6, 2017, Nena began working for Allied as a Customer Service Agent.

16.     At all times relevant hereto, Nena adequately performed the job duties assigned to her.

17.     On various occasions, Nena received the "Shining Stars" award for meeting her monthly goals.

18.     On or about February 10, 2020, Nena informed Allied that she was pregnant.

19.     That same day, after her disclosure, Allied began scrutinizing Nena's work in a manner that was distinct from the period before she disclosed her pregnancy.

3

20.     On February 10, 2020, Allied began giving Nena "occurrence points" for excessive bathroom use.

21.     Nena's pregnancy caused her to need to use the bathroom more frequently and due to her condition, Nena was not able to control how often she needed to relieve herself.

22.     Defendant's policy only allows employees to use the bathroom <u>ten (10) minutes total per workweek</u>. Allied's policy states that there needs to be a medical reason that would create the need for bathroom breaks over ten minutes per week.

23.     Defendant did not notify Nena about the "occurrence points" until long after the fact.

24.     At the time that Nena received the "occurrence points," Defendant did not notify Nena that she had the right to provide a medical reason that would potentially allow her more than ten minutes of bathroom time a week.

25.     Before February 10, 2020, Nena had not received discipline for using the bathrooms for more than ten minutes in a workweek.

26.     Around February 11, 2020, Nena also informed Allied she would be seeking FMLA leave to attend doctor's appointments.

27.     At all relevant times hereto, Nena also had intermittent FMLA leave for her son's medical condition. This leave was last approved approximately in December 2019, and entitled her up to 154 hours per month of leave not to exceed her available FMLA hours.

28.     Since Nena had been approved for FMLA leave for her son, Allied had explained to her that Allied calculated available FMLA time using a rolling 12-month period measuring backwards from the date an employee uses any FMLA time and she could build her balance back

up by working on a date which she took FMLA leave the previous year because then those hours would "fall off" and Nena would accrue them back.

29.     In fact, in an email dated  December 2019, Senior Human Resources Manager Lauren Hesselbach explained to Nena that, "Once your balance builds back up, you will be able to use FMLA hours again. . . . you should have hours that will "fall off" to allow for your balance to increase in the next month or so."

30.     In May of 2020, Nena was experiencing more medical complications with her pregnancy.

31.     As a result of the medical complications, Nena sought intermittent leave under the FMLA.

32.     Nena's FMLA was approved on May 26, 2020. She was approved for intermittent leave until the beginning of October 2020, after which  her leave would be continuous.

33.     When Nena's leave was approved, she was told that she only had 49 hours of FMLA time left and was threatened that she would be fired if she exhausted her FMLA time after giving birth. Specifically, Hesselbach warned Nena via email that "If you are unable to return to work after the available time has expired, you will be considered unavailable for work and therefore resigned."

34.     Nena at no point agreed to these terms.

35.     Nena asked Allied if she would be able to receive a leave accommodation after she gave birth, or if she could take short-term disability leave and was told no.

36.     After Nena requested an accommodation due to her pregnancy, things at the workplace worsened, including as outlined further below.

5

37.     This caused Nena to experience extreme stress, and she dreaded work, but she needed the income to support her son and unborn child.

38.     In May of 2020, Nena was due to receive her annual review.

39.     Since Nena began her employment with Allied, all her reviews had been in-person. Prior to any written review being submitted and the employee signing the review, the employee was normally given an opportunity to go over the review with his or her manager and make changes.

40.     Nena did not receiver her review until approximately June 15, 2020, and this review was written, instead of in person.

41.     In Nena's review, Allied noted that Nena had several "occurrence points."

42.      Nena didn't find out until approximately the beginning of July 2020 that the occurrence points she received were due to her using the bathroom excessively.

43.     Allied gave Nena "occurrence points" for her bathroom use, despite being aware of Nena's pregnancy.

44.     Since the Defendant did not notify Nena about these "occurrence points" until months later, Nena did not have an opportunity to request an accommodation. She was not even aware that she was being disciplined for her bathroom use.

45.     Unlike every year previous, Nena was not given a chance to go over this review with her manager and make changes before it was submitted.

46.     Instead, her supervisor Jamie Bain asked her to sign this review via a Skype message to Nena.

47.     Around June 17, 2020, Nena's review was submitted without her having a chance to discuss it with her supervisor or address any problems.

48.     Other non-pregnant employees received a personal phone call from Bain, had their annual reviews conducted over the phone, and were allowed to resolve anything that needed to be addressed before signing and submitting their final review.

49.     Around the beginning of July 2020, Nena had a meeting with Ms. Bain to discuss her "occurrence points" and was told for the first time that they were as a result of her bathroom use in excess of 10 minutes per week.

50.     Nena explained to Ms. Bain that her need for additional bathroom breaks was due to her pregnancy. Regardless of her disclosure of a valid medical reason, Bain did nothing to remedy or retract Nena's "occurrence points."

51.     Nena complained to Bain that she felt that this was discriminatory.

52.     On or about July 18, 2020, Nena sent an email to the Senior Director of Call Center Operations complaining about the pregnancy discrimination she was experiencing.

53.     Nothing was done about Nena's complaints of discrimination.

54.     Starting on July 28, 2020, Nena took approved intermittent leave for her son's medical condition.

55.     Nena was under the impression that she had FMLA hours available to do so because on July 29, 2020, Shyasia Cook in Human Resources told her she had only used 478.1 hours of FMLA time and that in the coming days/weeks she would have hours accrue back into her FMLA bank balance.

56.     On or about July 30, 2020, Nena was terminated. Defendant claimed that it considered her to have resigned when she allegedly exceeded her FMLA time.

57.     Defendant has a progressive attendance policy.

58.     Defendant did not follow its own progressive discipline  policy with Nena and unilaterally  terminated her instead.

59.     Nena never tendered any resignation. Nor did she believe that she exhausted her FMLA time based on Defendant's explanation of how FMLA time is calculated.

60.     Nena's termination, which occurred in the middle of the Covid-19 pandemic and while 29 weeks pregnant, caused her immense stress.

61.     Approximately three weeks after being terminated, Nena lost her baby.

<u>**COUNT I**</u>
**Discrimination on the Basis of Pregnancy Under Title VII per the Pregnancy Discrimination Act ("PDA")**

62.     Plaintiff re-alleges and incorporates all paragraphs in this Complaint by reference as if fully re-pled herein.

63.     Title VII, by the Pregnancy Discrimination Act of 1978, prohibits discrimination based on pregnancy as it relates to any aspect of employment, including hiring, firing, pay, job assignments, promotions, layoff, training, benefits, and any other term or condition of employment.

64.     The PDA prohibits employers from terminating an individual based on pregnancy.

65.     Immediately after Plaintiff notified Defendant about her pregnancy, Defendant began treating her differently including by scrutinizing her work, subjecting her to discipline, and lowering her performance reviews.

66.     Ultimately, Defendant terminated Plaintiff based on her pregnancy.

67.     Plaintiff's pregnancy was a motivating factor for Defendant's conduct and adverse employment action towards her.

8

68.     Defendant's actions were willful, intentional, and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's federally protected rights.

69.     As a result of Defendant's actions, Plaintiff has suffered loss of income, loss of benefits, endured emotional pain and suffering, stress, and incurred attorney's fees and expenses.

**WHEREFORE**, Plaintiff prays for a judgment against Defendant as follows:

A.  Enter a judgment in her favor against Defendant for lost pay and benefits;

B.  Back Pay;

C.  Front Pay;

D.  Compensatory damages;

E.  Punitive damages;

F.  Reasonable attorney's fees and costs and expert fees and costs pursuant to 42 U.S.C. 1988; and

G.  Such other relief as this Court deems just and equitable.

### COUNT II
### Discrimination on the Basis of Pregnancy Under the Illinois Human Rights Act ("IHRA")

70.     Plaintiff re-alleges and incorporates all paragraphs in this Complaint by reference as if fully re-pled herein.

71.     Section 2-102(A) of the Human Rights Act provides, in pertinent part:

It is a civil rights violation . . . [f]or any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, . . . discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination. 775 ILCS 5/2-102(A).

72.     The IHRA further defines "unlawful discrimination" as "discrimination against a person because of his or her actual or perceived: . . . pregnancy." 775 ILCS 5/1-103(Q).

73.  The IHRA further adds that

It is a civil rights violation. . . . If after a job applicant or employee, including a part-time, full time or probationary employee, requests a reasonable accommodation, for an employer to not make reasonable accommodations for any medical or common condition of a job application or employee related to pregnancy or childbirth, unless the employer can demonstrate that the accommodation would impose undue hardship on the ordinary operation of the business of the employer. 775 ILCS 5/1-102(J)(1).

74.  Under the Act, a reasonable accommodations, include but are not limited to "more frequent or longer bathroom breaks . . . time off to recover from conditions related to childbirth."

75.  When Plaintiff found out about her bathroom "occurrence points," she explained the more frequent and/or longer bathroom use  was due to her pregnancy and Defendant refused to accommodate her by providing her more time each week for bathroom breaks and failed to rescind the "occurrence points" it had levied against her.

76.  Defendant's ten-minute bathroom policy is discriminatory against pregnant individuals.

77.   Additionally, Plaintiff asked for additional leave after childbirth after her FMLA was exhausted.

78.  Plaintiff requested reasonable accommodations for her pregnancy and childbirth, but was denied them.

79.  Plaintiff's requests would not have imposed undue hardship on the ordinary operation of the business of the Defendant.

80.  Defendant violated the IHRA by summarily and unilaterally denying Plaintiff's reasonable accommodations.

81.  Defendant discriminated against and terminated Plaintiff on the basis of her pregnancy.

82.     Because Defendant terminated her, Plaintiff suffered loss of employment, loss of wages, loss of future employment opportunities, embarrassment, humiliation, stress ,and emotional distress.

**WHEREFORE**, Plaintiff prays that this Court grant her the following relief:

     A.     Award her lost wages and benefits of employment;

     B.     Award her actual damages in excess of $50,000, including emotional distress damages and damages for lost career opportunities;

     C.     Award her a reasonable amount of front pay; and

     D.     Grant such other relief as is just and proper in the circumstances.

**COUNT III**
**Retaliation Under Title VII**

83.     Plaintiff re-alleges and incorporates all paragraphs in this Complaint by reference as if fully re-pled herein.

84.     Defendant retaliated against Plaintiff for engaging in activity protected by Title VII when it subjected her to different and less favorable terms and conditions of employment and terminated her employment because she complained in good faith about unlawful discrimination.

85.     Defendant acted intentionally and with reckless indifference to Plaintiff's rights under Title VII.

86.     As a result of Defendant's actions, Plaintiff has suffered loss of income, loss of benefits, endured emotional pain and suffering, and incurred attorney's fees and expenses.

**WHEREFORE**, Plaintiff prays for a judgment against Defendant as follows:

     A.  Enter a judgment in her favor against Defendant for lost pay and benefits;

     B.  Back Pack;

     C.  Front Pay;

11

D. Compensatory damages;

E. Punitive damages;

F. Reasonable attorney's fees and costs and expert fees and costs pursuant to 42 U.S.C. 1988; and

G. Such other relief as this Court deems just and equitable.

**COUNT IV**
**Retaliatory Discharge Under the IHRA**

87. Plaintiff re-alleges and incorporates all paragraphs in this Complaint by reference as if fully re-pled herein.

88. Section 6-101(A) of the IHRA provides, in pertinent part:

It is a civil rights violation for a person, or for two or more persons to conspire, to:

(A) Retaliation. Retaliate Against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination.

89. Plaintiff complained about pregnancy discrimination.

90. Plaintiff's last complaint of discrimination was on July 18, 2020.

91. Section 775 ILCS 5/1-102(J)(12) provides, in pertinent part:

It is a civil rights violation for a person, or for two or more persons to conspire, to:

(2) For an employer to deny employment opportunities or benefits to or to take adverse action against an otherwise qualified job applicant or employee . . . if the denial or adverse job action is based on the need of the employer to make reasonable accommodations to the known medical or common conditions related to the pregnancy or childbirth of the applicant or employee.

92. Defendant's termination of Plaintiff on July 30, 2020, was in retaliation for her complaining about discrimination and her requests for reasonable accommodations.

93.     As a result of Defendant's actions, Plaintiff has suffered and will continue to suffer both economic and non-economic harm.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

A.  Award her lost wages and benefits of employment;

B.  Award her actual damages in excess of $50,000, including emotional distress damages and damages for lost career opportunities;

C.  Award her a reasonable amount of front pay; and

D.  Grant such other relief as is just and proper in the circumstances.

## COUNT V
### Family Medical Leave Act Violations

94.     Plaintiff re-alleges and incorporates all paragraphs in this Complaint by reference as if fully re-pled herein.

95.     Plaintiff was an "eligible employee" under the FMLA and requested and obtained FMLA-qualifying leave from Defendant, which at all times relevant hereto was an "employer" as defined under the FMLA.

96.     Immediately after Plaintiff was approved for leave due to her pregnancy, she was warned that if she exceeded her leave after giving birth, she would be terminated.

97.     Defendant discharged Plaintiff because she exercised her rights under the FMLA.

98.     Defendant alleged that Plaintiff had exceeded her FMLA time, despite telling her the day prior that she still had FMLA time available.

99.     Defendant's conduct violates the FMLA and is willful, wanton, and malicious in nature.

100.     In violating Plaintiff's rights under the FMLA, Defendant did not act in good faith and had no reasonable grounds for believing its actions did not violate the applicable provisions of the FMLA.

101.     As a direct and proximate result of Defendant's unlawful conduct under the FMLA, Nena has suffered injuries and damages for which she is entitled to recovery as set forth herein.

**WHEREFORE,** Plaintiff prays for judgment regarding all of his claims as follows:

A. Declaring that the acts and practices by Defendant as described herein constitutes a violation of the FMLA;

B. Enjoining and permanently restraining these violations of the FMLA;

C. Awarding Plaintiff back wages and lost benefits due to the Defendant's violations of the FMLA;

D. Awarding Plaintiff  front pay, or, in the alternative, directing Defendant to reinstate Nena to her previous position;

E. Awarding Plaintiff liquidated damages in an additional amount equal to the sum of the actual damages and interest pursuant to 29 U.S.C. § 2617(a)(1)(A);

F. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in connection with the instant action; and

G. Awarding such further additional relief, including equitable damages, as the Court may deem just and proper or as otherwise permitted by law.

<u>**Count VI**</u>
**Intentional Infliction of Emotional Distress**

102.     Plaintiff re-alleges and incorporates all paragraphs in this Complaint by reference as if fully re-pled herein.

103.     Defendant engaged in deliberate conduct when it repeatedly failed to take remedial action following Plaintiff's numerous complaints of the discriminatory behavior Plaintiff endured, thus ratifying the discrimination.

104.    Defendant's conduct was extreme and outrageous.

105.    Defendant's extreme and outrageous conduct caused Plaintiff to suffer severe emotional distress.

**WHEREFORE**, Plaintiff respectfully prays that this Court:

A.    Enter a judgment in her favor;

B.    Award damages sufficient to compensate Plaintiff for the severe emotional distress inflicted by Defendant;

C.    Award Punitive Damages;

D.    Grant such other relief as is just and proper in the circumstances.


Respectfully submitted,

FISH POTTER BOLAÑOS, P.C.

By:*/s/ Thalia Pacheco*
One of Plaintiff's Attorneys

**TRIAL BY JURY DEMANDED**


Kimberly Hilton
Thalia Pacheco
Fish Potter Bolaños, P.C.
Attorneys for Plaintiff
200 E. 5th Ave, Suite 123
Naperville, IL 60563
T: (312) 861-1800
khilton@fishlawfirm.com
TPacheco@fishlawfirm.com
Docketing@fishlawfirm.com